IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

KAREN ENGLAND,                     §
                                   §
          Plaintiff,               §
                                   §
                                   §
v.                                 §   CIVIL ACTION NO. H-10-1937
                                   §
LIBERTY MUTUAL INSURANCE COMPANY,  §
                                   §
          Defendant.               §

## MEMORANDUM OPINION

Pending before the court[1] is Defendant's Motion for Summary Judgment (Doc. 35). The court has considered the motion, all relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion.

## I.  Case Background

Plaintiff Karen England ("Plaintiff") filed the present action against Liberty Insurance Corporation, Liberty Mutual Insurance Company ("Defendant"), and Linda Evans ("Evans"), alleging four causes of action predicated on a bad faith delay or denial of benefits: (1) violation of the Texas Insurance Code ("Insurance Code"); (2) violation of the Deceptive Trade Practices Act ("DTPA"); (3) breach of the common law duty of good faith and fair dealing; and (4) punitive damages for bad faith.

---

[1]    The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Doc. 11.

## A.  Procedural History

Plaintiff filed this action against Liberty Insurance Company and Linda Evans in state court on April 19, 2010.[2]  On June 1, 2010, Defendants removed the case to federal court on the basis of diversity jurisdiction.[3]  The court denied Plaintiff's motion to remand on August 27, 2010.[4]

With the court's leave, Plaintiff filed her First Amended Complaint, which added Liberty Mutual Insurance Company as a defendant in the suit, on October 7, 2010.[5]  Within two weeks, Evans and Liberty Insurance Company filed respective motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).[6]  The court granted both motions on March 10, 2011; Liberty Mutual Insurance Company remains as the sole defendant.[7]

Defendant filed the pending motion for summary judgment on May 6, 2011.[8]  Plaintiff responded about two weeks later, on May 24,

---

[2]     See Doc. 1, Def.'s Not. of Removal, p. 1.

[3]     See id.

[4]     See Doc. 9, Min. Entry Order for Aug. 27, 2010; see also Doc. 6, Pl.'s Mot. to Remand.

[5]     See Doc. 14, Pl.'s 1st Am. Compl.; see also Doc. 12, Pl.'s Mot. to Am. Compl.; Doc. 13, Ord. Granting Pl.'s Mot. to Am. Compl.

[6]     See Doc. 15, Evans' Mot. to Dismiss; Doc. 16, Lib. Mut. Co.'s Mot. to Dismiss.

[7]     See Doc. 32, Ord. Granting Evans' and Lib. Mut. Co.'s Mots. to Dismiss.

[8]     See Doc. 35, Def.'s Mot. for Summ. J.

2011, and Defendant filed a reply on June 10, 2011.[9]  Four months later, on October 10, 2011, Defendant filed a supplement to its motion, to which Plaintiff responded on October 18, 2011.[10]

## B.  **Factual History**

Plaintiff, an employee of Insurance Services Office, Inc. (ISO)[11], sustained an injury to her back on or about February 20, 2008.[12]  She continued to work until February 26, 2008, around which time she reported the injury to her direct supervisor, Celine Adams.[13]  That same day, Plaintiff visited a chiropractor, Jim Lay, D.C., ("Dr. Lay"), and reported that her back pain did not originate at work by marking "other," and not "work" on an intake form.[14]  Dr. Lay diagnosed Plaintiff with a herniated lumbar disc and provided her with an excuse from work.[15]  On or about February

---

[9]    See Doc. 39, Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J; Doc. 48, Def.'s Reply to Pl.'s Resp. to Summ. J.

[10]    See Doc. 56, Def.'s Suppl. to Mot. for Summ. J.; Doc. 57, Pl.'s Resp. to Def.'s Suppl. to Mot. for Summ. J.

[11]    The record is not clear as to Plaintiff's employer. See e.g. Doc. 35-1, Ex. A to Def.'s Mot. for Summ. J., Pl.'s Depo., p. 23 (Plaintiff agreeing that she was employed by ISO); Doc. 35-5, Ex. E to Def.'s Mot. for Summ. J., TWC Forms (Plaintiff indicating that NIA Consulting Company was her employer at the time of the injury).  For purposes of the court's analysis, however, this fact is not relevant.

[12]    See Doc. 35-1, Ex. A to Def.'s Mot. for Summ. J., Pl.'s Depo., p. 23.

[13]    See Doc. 39-16, Ex. P to Pl.'s Mot. in Opp. to Def.'s Mot. for Summ. J., Pl.'s Aff., ¶ 2.

[14]    See Doc. 39-6, Ex. F to Pl.'s Mot. in Opp. to Def.'s Mot. for Summ. J., Dr. Lay's TWC Work Status Report, p. 1; Doc. 35-1, Ex. A to Def.'s Mot. for Summ. J., Pl.'s Depo., pp. 55-56.

[15]    See Doc. 39-6, Ex. F to Pl.'s Mot. in Opp. to Def.'s Mot. for Summ. J., Dr. Lay TWC Work Status Report, p. 1.

29, 2008, Plaintiff visited the emergency room at Cedar Park Regional Medical Center, complaining of back pain that had become progressively worse over the previous two years.[16]

A magnetic resonance imaging scan ("MRI") conducted at Seton Northwest Hospital on March 1, 2008, confirmed Dr. Lay's diagnosis of a herniated disc and showed advanced degenerative disc disease of the lower spine.[17]  James Smith, M.D., ("Dr. Smith"), to whom Plaintiff was referred by Dr. Lay, evaluated Plaintiff on March 5, 2008.[18] Dr. Smith recommended pain management as Plaintiff's course of treatment, reporting that "[a]s a surgeon, I have specifically nothing to offer [Plaintiff]."[19]

Plaintiff retained counsel on or about March 16, 2008, and filed an Employee's Claim for Compensation for Work-Related Injury or Occupational Disease form ("DWC Form-041") with the Texas Department of Insurance's Division of Workers' Compensation ("DWC") two days later, on March 18, 2008.[20]  Ten days later, on March 28, 2008, Plaintiff filed an updated DWC Form-041 that listed witnesses

---

[16]     See Doc. 35-1, Ex. A to Def.'s Mot. for Summ. J., Cedar Park ER Recs., pp. LM0894-97.

[17]     See Doc. 39-7, Ex. G to Pl.'s Mot. in Opp. to Def.'s Mot. for Summ. J., MRI Report, p. 1; see also Doc. 35-3, Ex. C to Def.'s Mot. for Summ. J., Seton Assessment Form.

[18]     See Doc. 35-3, Ex. C to Def.'s Mot. for Summ. J., Dr. Smith Initial Med. Eval., p. 100330.

[19]     Id. at 100331.

[20]     See Doc. 35-2, Ex. B-3 to Def.'s Mot. for Summ. J., Letter from Pl.'s Att.; Doc. 35-5, Ex. E to Def.'s Mot. for Summ. J., Tex. Dept. of Ins. Forms, p. 2.

4

to the injury, elaborated on the cause of the injury, identified Defendant as her employer's insurer, and named Gordon Marshall, M.D., ("Dr. Marshall"), as her treating physician.[21] Upon receiving notice of Plaintiff's claim on March 28, 2008, Defendant commenced an investigation to determine compensability.[22]

On referral from Dr. Lay, Plaintiff had an orthopedic consultation with Dr. Marshall on April 14, 2008.[23] Dr. Marshall recommended that Plaintiff first continue her pain-management regimen and begin physical therapy.[24] If Plaintiff's pain persisted, Dr. Marshall noted that they would "further discuss proceeding with surgery" at Plaintiff's follow-up visit.[25] Defendant received this record from Dr. Marshall prior to denying Plaintiff's claim for workers' compensation benefits on April 29, 2008.[26]

Following Defendant's denial of benefits, Plaintiff returned to Dr. Marshall on May 12, 2008, on which date Dr. Marshall

---

[21]   See Doc. 35-5, Ex. E to Def.'s Mot. for Summ. J., Tex. Dept. of Ins. Forms, p. 3.

[22]   See Doc. 35-2, Ex. B to Def.'s Mot. for Summ. J., Randall Moody Aff., ¶ 3.

[23]   See Doc. 35-2, Ex. B-2 to Def.'s Mot. for Summ. J., Dr. Marshall Med. Rec.

[24]   See id.

[25]   Id.

[26]   See Doc. 39-1, Ex. A to Pl.'s Mot. in Opp. to Def.'s Mot. for Summ. J., Notice of Denial of Compensability; Doc. 35-2, Ex. B-4 to Def.'s Mot. for Summ. J., Apr. 23 E-mail from Linda Evans to Pl.'s Att. ("We have no other Dr [sic] reports besides the initial report from [Dr.] Marshall 04-14-08.").

recommended that Plaintiff undergo a surgical discectomy of her L4-5 vertebrae.[27] Dr. Marshall sought preauthorization for the surgery and Defendant conceded the medical necessity of the procedure on May 14, 2008, after its receipt of a Physician Review Recommendation.[28] Plaintiff, however, continued her pain-management treatment with Matthew Schocket, M.D., ("Dr. Schocket"), and consulted George Tipton, M.D., ("Dr. Tipton"), for a second surgical opinion in late May 2008.[29] Dr. Tipton also recommended surgery, but did not request preauthorization from Defendant.[30] Indeed, on June 10, 2008, Plaintiff indicated to Dr. Schocket that she would "hold off for now" on the surgery because of work concerns.[31]

On June 9, 2008, having obtained additional medical records regarding Plaintiff's claimed injury, Defendant accepted Plaintiff's workers' compensation claim as to Plaintiff's "Lumbar Sprain/Strain" and awarded benefits from March 11, 2008, until

---

[27]    See Doc. 35-2, Ex. B-5 to Def.'s Mot. for Summ. J., Physician Rev. Recomm.; Doc. 35-2, Ex. B-9 to Def.'s Mot. for Summ. J., Desig. Doctor Rep., p. LM0884.

[28]    See Doc. 35-2, Ex. B-5 to Def.'s Mot. for Summ. J., Physician Rev. Recomm.

[29]    See Doc. 39-9, Ex. I to Pl.'s Mot. in Opp. to Def.'s Mot. for Summ. J., Dr. Schocket May 2008 Rec.; Doc. 39-4, Ex. D to Pl.'s Mot. in Opp. to Def.'s Mot. for Summ. J., Dr. Tipton Depo., pp. 33-37.

[30]    See Doc. 39-4, Ex. D to Pl.'s Mot. in Opp. to Def.'s Mot. for Summ. J., Dr. Tipton Depo., p. 37.

[31]    Doc. 35-3, Ex. C to Def.'s Mot. for Summ. J., Dr. Schocket June 10 Med. Rec.

Plaintiff began a new job on June 14, 2008.[32] About ten days after Plaintiff began her new job, on June 27, 2008, Richard F. Klics, D.C., ("Dr. Klics") examined Plaintiff at the request of the DWC and in the capacity of a Designated Doctor.[33] On June 30, 2008, having considered his own examination of Plaintiff, as well as Plaintiff's medical records, Dr. Klics concluded that Plaintiff's work injury "extends to the lumbar spine only" and that Plaintiff was a surgical candidate for a discectomy.[34]

Three months later, on September 8, 2008, a second Designated Doctor, Richard Neel, M.D., ("Dr. Neel"), examined Plaintiff.[35] Dr. Neel diagnosed a "lumbar strain with herniated nucleus pulposis" and noted that Plaintiff remained a candidate for surgery.[36] After another three months, on December 23, 2008, Plaintiff requested clarification from Dr. Klics regarding whether Plaintiff's work injury included her lumbar disc herniation.[37]

Over a year after Plaintiff sustained her injury, on March 10,

---

[32]    Doc. 35-2, Ex. B-8 to Def.'s Mot. for Summ. J., June 9 E-mail from Linda Evans to Pl.'s Att.; see Doc. 35-2, Ex. B to Def.'s Mot. for Summ. J., Randall Moody Aff., ¶ 10.

[33]    See Doc. 35-2, Ex. B-9 to Def.'s Mot. for Summ. J., Desig. Dr. Klics Rep., pp. LM0882-87.

[34]    Id. at LM0886-87.

[35]    See Doc. 35-2, Ex. B-11 to Def.'s Mot. for Summ. J., Desig. Dr. Neel Rep., pp. 100200-02.

[36]    See id. at 100202.

[37]    See Doc. 35-4, Ex. D to Def.'s Mot. for Summ. J., Letter from Pl.'s Att. to DWC.

2009, the parties entered into a Benefit Dispute Agreement ("BDA"), agreeing that Plaintiff's "compensable injury of 2/20/08, consisting of a lumbar strain/sprain, extends to include a herniated disc at the L4-5 level."[38]  On April 16, 2009, Plaintiff returned to Dr. Tipton, who requested a second MRI before submitting a preauthorization request on May 21, 2009, to operate on Plaintiff's spine.[39]  A preoperative psychological evaluation was conducted prior to Defendant authorizing the surgery on July 14, 2009.[40]  Dr. Tipton performed the surgery three weeks later, on August 5, 2009.[41]

## II.   Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson

---

[38]   Doc. 35-2, Ex. B-12 to Def.'s Mot. for Summ. J., Benefit Dispute Agreement.

[39]   See Doc. 39-13, Ex. M to Pl.'s Mot. in Opp. to Def.'s Mot. for Summ. J., Dr. Tipton Apr. 16 2009 Med. Recs.; Doc. 39-14, Ex. N to Pl.'s Mot. in Opp. to Def.'s Mot. for Summ. J., Apr. 2009 MRI; Doc. 35-2, Ex. B. to Def.'s Mot. for Summ. J., Randall Moody Aff., ¶ 16.

[40]   See Doc. 35-2, Ex. B to Def.'s Mot. for Summ. J., Randall Moody Aff. ¶ 16.

[41]   See Doc. 39-15, Ex. O to Pl.'s Mot. in Opp. to Def.'s Mot. for Summ. J., Operative Rep.

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet
Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th
Cir. 2001).  To be genuine, the dispute regarding a material fact
must be supported by evidence such that a reasonable jury could
resolve the issue in favor of either party.  Anderson, 477 U.S. at
250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th
Cir. 2002).

The movant must inform the court of the basis for the summary
judgment motion and must point to relevant excerpts from pleadings,
depositions, answers to interrogatories, admissions, or affidavits
that demonstrate the absence of genuine factual issues.  Celotex
Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th
Cir. 1992).  If the moving party can show an absence of record
evidence in support of one or more elements of the case for which
the nonmoving party bears the burden, the movant will be entitled
to summary judgment.  Celotex Corp., 477 U.S. at 322.  In response
to a showing of lack of evidence, the party opposing summary
judgment must go beyond the pleadings and proffer evidence that
establishes each of the challenged elements of the case,
demonstrating that genuine issues of material fact do exist that
must be resolved at trial.  Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in
favor of the nonmoving party, and any reasonable inferences are to
be drawn in favor of that party."  Evans v. City of Houston, 246

9

F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### III.  Analysis

Plaintiff identified the following causes of action in her amended complaint: (1) breach of the duty of good faith and fair dealing; (2) violations of §§ 541.060(a)(2)(A), 541.060(a)(7), 541.061(1)-(3), 541.002(1) of the Insurance Code; (3) violation of the DTPA; and (4) punitive damages for bad faith. Defendant seeks summary judgment in its favor on all of Plaintiff's claims.

Defendant contends that: (1) Plaintiff failed to exhaust administrative remedies in challenging the denial of workers' compensation benefits; (2) certain statutory claims made by Plaintiff under the Insurance Code do not authorize private causes of action; (3) Plaintiff has produced no evidence of misrepresentations made by Defendant to Plaintiff; (4) the existence of a bona fide dispute over the compensability and the extent of Plaintiff's injury precludes bad-faith liability for Plaintiff's statutory and common law claims; and (5) Plaintiff did not suffer an injury independent of her compensable injury. The parties agree that Texas law is applicable to the present dispute. The court considers the merits of Defendant's motion.

## A.   **Plaintiff's Failure to Exhaust Administrative Remedies**

Defendant argues that the court lacks jurisdiction over Plaintiff's claims because Plaintiff failed to exhaust administrative remedies through the DWC. The court considered the same argument in Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and denied the motion on August 12, 2011. Defendant presents no additional facts for the court's consideration in the present motion. Therefore, summary judgment is denied for the same reasons the motion to dismiss was denied.[42]

## B.   **Statutory Claims Under the Texas Insurance Code**

---

[42]   _See_ Doc. 54, Mem. Op. Denying Def.'s Mot. to Dismiss for Lack of Subj. Mat. Jxn.; _see also_ Doc. 34, Def.'s Mot. to Dismiss for Lack of Subj. Mat. Jxn.

## 1.  Sections 541.060 and 542.003

Sections 541.060 and 542.003 of the Insurance Code define and prohibit unfair settlement practices by an insurer "with respect to a claim by an insured."  Tex. Ins. Code § 541.060(a); see also Tex. Ins. Code § 542.003 (prohibiting unfair claim settlement practices).   Relevant to Plaintiff's claims, § 541.060 prohibits an insurer from:

> . . .
>
> (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of:
>
> (A) a claim with respect to which the insurer's liability has become reasonably clear; . . .
>
> (3) failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim; . . .
>
> (7) refusing to pay a claim without conducting a reasonable investigation with respect to the claim.
>
> . . .

Tex. Ins. Code §§ 541.060(a)(2)(A), (a)(3), (a)(7).  Section 542.003, for purposes of this suit, specifies that an insurer's "fail[ure] to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurer's policy" constitutes an unfair claim settlement practice under the Insurance Code.  Tex. Ins. Code § 542.003(b)(3).

In Defendant's supplement to its motion for summary judgment, Defendant cites the Texas Supreme Court's recent decision in Tex.

Mut. Ins. Co. v. Ruttiger, ___ S.W.3d ___, 2011 WL 3796353 (Tex.
2011)[43] in support of its argument that Plaintiff's statutory and
bad faith claims are foreclosed as a matter of law.  In that case,
plaintiff Ruttiger filed suit against his employer's workers'
compensation carrier, alleging violations of the Insurance Code and
the DTPA, as well as a breach of the duty of good faith and fair
dealing, for the insurer's delay in paying workers' compensation
benefits.  2011 WL 3796353 at *3.

The insurer initially denied Ruttiger's claim on the ground
that the injury was not sustained at work.  Id. at *1-2.  About
three months after the denial, Ruttiger requested a Benefits Review
Conference and the parties entered into a BDA.  Id. at *2.  The
parties agreed that Ruttiger had sustained a compensable injury
and, upon the approval of the agreement by the DWC, the insurer
paid benefits to Ruttiger, including temporary income, surgery, and
associated medical expenses, for the agreed period of disability.
Id.  Ruttiger alleged, inter alia, that the insurer violated the
Insurance Code by failing to: (1) employ reasonable standards for
promptly investigating claims; (2) conduct a reasonable
investigation; (3) provide a reasonable explanation for denial of
the claim; and (4) effect a prompt, equitable settlement of the

---

[43]    The Texas Supreme Court's opinion in Ruttiger has not been
published and remains subject to withdrawal or modification.  Because it
nonetheless reflects the current position of the state's highest court on this
issue, the court will consider it in accordance with Erie R.R. v. Tompkins,
304 U.S. 64 (1938).

claim when liability was reasonably clear.  Id. at *3; see Tex. Ins. Code §§ 541.060(a)(2)(A), (a)(3), (a)(7); Tex. Ins. Code §§ 541.003(b)(3).

The Texas Supreme Court considered Ruttiger's claims under §§ 541.060 and 541.002 of the Insurance Code in light of the procedures and provisions detailed by the amended Texas Workers' Compensation Act ("TWCA") and the DWC.[44]  See WL 3796353 at *6, 8-10.  It determined that the general provisions of § 541.060 of the Insurance Code were inconsistent with the legislative intent of the amended TWCA, "with its definitions, detailed procedures, and dispute resolution process."  Id. at *12; see id. at *8-11. Further noting that "[i]f allowed to bring Insurance Code claims, workers' compensation claimants will actually have incentive to delay seeking resolution of disputes through the carefully crafted administrative dispute resolution procedures of the Act," the Texas Supreme Court held that workers' compensation claimants could not assert causes of action against an insurer under the general provisions of § 541.060 prohibiting unfair or deceptive settlement practices by an insurer.  Id. at 12.  Applying the same reasoning, the Texas Supreme Court also precluded causes of action brought by workers' compensation claimants under § 542.003, which, among other unfair claim settlement practices, prohibits insurers from failing to institute reasonable standards for efficiently resolving claims.

---

[44]     Tex. Lab. Code §§ 501.001 et. seq.

See id. at 13.

Here, Plaintiff asserts various violations of § 541.060 and § 542.003 of the Insurance Code.[45]   Because Ruttiger precludes workers' compensation claimants from asserting claims under these sections of the Insurance Code, the court grants summary judgment in favor of Defendants on Plaintiff's claims arising under these sections of the Insurance Code.

### 2.   Section 541.061

Under the Insurance Code, an insurer commits an unfair or deceptive act or practice when it misrepresents an insurance policy by:

> (1) making an untrue statement of material fact;
>
> (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;
>
> (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact . . .

Tex. Ins. Code § 541.061.   Defendant argues that Plaintiff has no evidence to support her claim that Defendant misrepresented its insurance policy in violation of § 541.061 of the Insurance Code.

In support of her misrepresentation claim, Plaintiff alleges that:

> [T]he specific misrepresentations occurred when the carrier represented to Ms. England that it would

---

[45]   See Doc. 35-2, Ex. B-8 to Def.'s Mot. for Summ. J., E-Mail from Linda Evans to Pl.'s Att.; Doc. 35-2, Ex. B to Def.'s Mot. for Summ. J., Randall Moody Aff., ¶ 10.

provide workers' compensation coverage for any
injuries that she may suffer in the course of her
employment. Defendants subsequently denied coverage
to Ms. England without conducting any investigation
and without any medical or other evidencing [sic]
indicating that the claim was not compensable. When
Ms. England and her attorneys contacted Defendants to
determine the reasons for their decision to deny
coverage, Defendants failed to disclose that they
obtained no legitimate evidence to support their false
representation that Ms. England's injuries were
preexisting and not compensable and that she was not
entitled to benefits. As a consequence of Defendants'
false representations, Ms. England was forced to delay
necessary medical treatment and pursue protracted DWC
proceedings. In addition, Defendants' [sic]
misrepresented to Ms. England's doctors and the DWC
that she was not entitled to the medical treatment
sought by her treating doctors. As such, in their
written denial of coverage, Defendants committed
actionable misrepresentations under Tex. Ins. Code §
541.061.[46]

As the court understands these allegations, Plaintiff asserts that

Defendant's denial of Plaintiff's workers' compensation claim

constituted a material misrepresentation of the scope of coverage

provided by Defendant because she believed that her injury should

have been covered by the policy. However, despite Plaintiff's

characterization, this claim only alleges a breach of contract, not

actionable misrepresentation. Although alluding to the existence

of misrepresentations, Plaintiff has failed to produce competent

summary judgment evidence of "any untrue statement made by [the

insurer] regarding the policy or any statement about the policy

that misled [her]." Ruttiger, 2011 WL 3796353 at *13. The court

---

[46] Doc. 39, Pl.'s Mot. in Opp. to Def.'s Mot. for Summ. J., 37-38.

thus grants summary judgment on this claim.[47]

## C.  DTPA Claims

As pled in her amended complaint, Plaintiff alleged that "Defendants' violations of the Texas Insurance Code create a cause of action under the DTPA." As in Ruttiger, the viability of Plaintiff's DTPA claims hinge on Defendant's violation of the Insurance Code. See 2011 WL 3796353 at *14. Because Plaintiff cannot recover on her Insurance Code claims, her contingent DTPA claims must necessarily fail. Summary judgment in favor of Defendant is thus granted as to Plaintiff's DTPA claims.

## D.  Duty of Good Faith and Fair Dealing

For over twenty years, Aranda v. Ins. Co. of North America, 748 S.W.2d 210, 215 (Tex. 1988), has allowed employees to assert claims for the breach of the duty of good faith and fair dealing against workers' compensation insurers. Defendant argues that the Texas Supreme Court's recent decision in Ruttiger, however, calls the holding of Aranda into question. See Ruttiger, 2011 WL 3796353 at *14-19. The court first considers the potential effect of Ruttiger on claims of this type.

### 1.  The Effect of Ruttiger on Workers' Compensation Claims for a Breach of the Duty of Good Faith and Fair Dealing

---

[47]     In connection with her Insurance Code claims, Plaintiff alleges that Defendant acted knowingly in violating §§ 541.060, 540.061, and 542.003 of the Insurance Code. See Tex. Ins. Code § 541.002(a) (defining "knowingly" for purposes of the Code); Doc. 14, Pl.'s Am. Compl., ¶ 4.9. Because the court grants summary judgment dismissing Plaintiff's Insurance Code claims, the alleged violation of § 541.002(a) is irrelevant.

In addition to resolving the incompatibility between provisions of the Insurance Code and the amended TWCA, the Texas Supreme Court addressed the continued viability of the extra-statutory cause of action accorded to workers' compensation claimants by Aranda. See Ruttiger, 2011 WL 3796353 at *1, 14-23; id. at 26-27 (Jefferson, J., dissenting). Seven of the nine Texas Supreme Court justices were willing to consider "whether Aranda should be overruled even though the court of appeals did not reach the issues involving the cause of action for breach of the duty of good faith and fair dealing." Id. at *1. The two remaining justices declined to consider the issue until it could first be addressed by the court of appeals. See id. at *23 (Willett, J., concurring). Of the seven justices willing to consider the Aranda issues raised in Ruttiger's claims, four would overrule Aranda while three would not. See id. at *1.

In Aranda, the Texas Supreme Court held that an employee may assert a cause of action outside of the dispute resolution procedures established by the TWCA against a workers' compensation insurer for a breach the duty of good faith and fair dealing. 748 S.W.2d at 212-13. That court cited three reasons for its holding: "(1) the disparity of bargaining power between compensation insurers and employees, (2) the exclusive control that an insurer exercises over processing of claims, and (3) arbitrary decisions by carriers to refuse to pay or delay payment of valid claims leave

18

the injured employees with no immediate recourse." Ruttiger, 2011 WL 3796353 at *14 (citing Aranda, 748 S.W.2d at 212-13). Consistent with the Texas Supreme Court's analysis in foreclosing Ruttiger's claims under §§ 541.060 and 542.003 of the Insurance Code, the justices in favor of overruling Aranda evaluated these reasons in light of reforms to the Act, noting that Aranda was decided prior to the 1989 amendments. See id. These justices found that the 1989 reforms to the TWCA "provid[ed] meaningful, binding administrative dispute resolution procedures, speeding up 'the start-to-finish time for the entire comp [sic] dispute resolution process, as well as [facilitated] interlocutory payment of comp benefits pending resolution.'" Id. at 16 (citation omitted). The justices thus concluded that the Legislature had thereby alleviated the concerns prompting the Texas Supreme's Court decision in Aranda. Id. at *17.

The three dissenting justices, on the other hand, contended that the Legislature did not intend "to abrogate entirely a common law bad faith remedy when it enacted the [TWCA]," but instead intended merely to limit such suits in the workers' compensation system. Id. at *26. Supporting this position, the dissenters cited § 416.001 of the TWCA, which provides that:

> An action taken by an insurance carrier under an order of the commissioner or recommendations of a benefit review officer under Section 410.031, 410.032, or 410.033 may not be the basis of a cause of action against the insurance carrier for a breach of the duty of good faith and fair dealing.

19

Tex. Lab. Code § 416.001; see Ruttiger, 2011 WL 3796353 at *26. The logical inference from § 416.001, the justices asserted, was that certain other claims against an insurer for the breach of the duty of good faith and fair dealing remained available to workers' compensation claimants. Ruttiger, 2011 WL 3796353 at *26. The justices noted that the TWCA limited exemplary damages "[i]n an action against an insurance carrier for a breach of the duty of good faith and fair dealing," thus suggesting that other damages were available for such claims. Tex. Lab. Code § 416.002(b); see Ruttiger, 2011 WL 3796353 at *26. These provisions, in conjunction with inferences drawn by the dissenting justices from the plain language of the TWCA, militated against overruling Aranda. Ruttiger, 2011 WL 3796353 at *26-27.

The justices in favor of overruling Aranda conceded that the language of the TWCA provisions cited by the dissenters indicated a clear intent of the Legislature to limit Aranda claims. Id. at *20. Considering the dissenters' analysis, however, they stated that the dissenters went beyond the plain language of the TWCA, arguing that "the absence of language abolishing the Aranda action does not reflect legislative intent to do the opposite and keep it available to litigants." Id. at *22. The four justices concluded by noting that it was the Texas Supreme Court's prerogative to determine whether the common law claim under Aranda remained viable given the Legislature's revamping of the TWCA and its "continual

supervision, monitoring, improving, and managing of the [workers'
compensation] system." Id. at *23.

Although it appears that there may be valid reasons to
overrule Aranda, the court declines to overrule established Texas
Supreme Court precedent in the absence of an express ruling by the
Texas Supreme Court. Aranda therefore serves as the applicable
framework for considering Plaintiff's claim that Defendant breached
its duty of good faith and fair dealing.

### 2.  Current Claims under Aranda

Under Texas law, a workers' compensation insurer owes its
insured's employees a duty to deal fairly and in good faith in
processing claims. Higginbotham v. State Farm Mut. Auto. Ins. Co.,
103 F.3d 456, 459 (5th Cir. 1997)(applying Texas law); (extending
Arnold v. Nat'l County Mut. Fire Ins. Co., 725 S.W.2d 165, 167
(Tex. 1987) to the workers' compensation system). Whether raised
under the DTPA and the Insurance Code or under Texas common law,
the insurer's duty is the same. See id. at 460. The insurer
breaches this duty in denying a claim if "the insurer knew or
should have known that it was reasonably clear that the claim was
covered." U.S. Fire Ins. Co. v. Williams, 955 S.W.2d 267, 268
(Tex. 1997). Even if the insurer is found to be wrong in denying
a claim, it may not be liable for bad faith if it can establish the
existence of a bona fide dispute. Id. Whether an insurer has a
reasonable basis for a denial is to be judged according to the

facts before the insurer at the time.  Harbor Ins. Co. v. Urban Constr. Co., 990 F.2d 195, 202 (5th Cir. 1993)(applying Texas law); Viles v. Sec. Nat'l Ins. Co., 788 S.W.2d 566, 567 (Tex. 1990).  In order to support a claim of bad faith, the insured must offer evidence that the insurer had no facts to support a denial. Higginbotham, 103 F.3d at 459.

Within the insurer's duty to deal fairly and in good faith falls the obligation to "reasonably investigate a claim."  Universe Life Ins. Co. v. Giles, 950 S.W.2d 48, 56 n.5 (Tex. 1997).  That is to say, if a full, unbiased investigation would have made coverage reasonably clear, the insurer cannot avoid bad faith liability by conducting an outcome determinative investigation.  See id. ("[a]n insurer will not escape liability merely by failing to investigate a claim so that it can contend that liability was never reasonably clear.").

Defendant in this case argues the existence of a bona fide dispute as to the compensability and extent of Plaintiff's injury on the ground that there was no evidence that the injury was work-related when it denied benefits.  In support, Defendant first directs the court's attention to summary judgment evidence of: (1) Plaintiff's failure to immediately report her alleged work-related injury to her employer,[48] and (2) Dr. Marshall's April 14, 2008

---

[48]  See e.g., Doc. 35-1, Ex. A to Def.'s Mot. for Summ. J., Pl.'s Depo., pp. 23-25; Doc. 39-16, Ex. P to Pl.'s Mot. in Opp. to Def.'s Mot. for Summ. J., Pl.'s Aff., ¶ 2.

report, the only medical record made available to Defendant following unsuccessful attempts to obtain records from Plaintiff and her attorney.[49] Regarding the latter, although Dr. Marshall's records indicate that Plaintiff reported sustaining her injury while at work, Defendant suggests that the length of time between Plaintiff's alleged injury, February 20, 2008, and her visit with Dr. Marshall about two months later, made its decision to deny benefits reasonable under the circumstances.

In response, Plaintiff argues that Defendant failed to conduct a reasonable investigation and created a bona fide dispute where none existed. Specifically, Plaintiff claims that, under the TWCA, Defendant did not require a medical authorization from the claimant in order to obtain medical records from her health care providers. See Tex. Lab. Code § 408.025(d)("A health care provider may disclose to the insurance carrier of an affected employer records relating to the diagnosis or treatment of the injured employee without the authorization of the injured employee to determine the amount of payment or the entitlement to payment.").[50]

The summary judgment evidence shows that on or about April 18, 2008, ten days before its denial of benefits, Defendant was aware

---

[49]    See Doc. 35-2, Ex. B-2 to Def.'s Mot. for Summ. J., Dr. Marshall Med. Rec.

[50]    Plaintiff cites to a former statutory provision of the Labor Code regarding an insurer's access to the relevant medical records of a workers' compensation claimant. See Doc. 39, Pl.'s Mot. in Opp. to Def.'s Mot. for Summ. J., p.29, n. 3. Because § 408.025 of the TWCA is largely unchanged from its predecessor provision cited by Plaintiff, the court evaluates Plaintiff's argument under § 408.025.

that Plaintiff had been treated by health care providers other than Dr. Marshall since the date of the alleged injury.[51]  Defendant, however, made no effort to secure these records directly from the identified providers, alleging that it was not entitled to medical records submitted for payment to Plaintiff's group health insurance without medical authorization, even when those records related to "treatment or hospitalization for which compensation is being sought."  Tex. Lab. Code § 408.025(d).  The statutory provision referenced by both parties contains no such caveat and Defendant has not directed the court to case law or competent summary judgment evidence to support its assertion.

Given this evidence, the court finds that questions of fact exist as to whether Defendant breached its duty of good faith and fair dealing by failing to conduct a reasonable investigation, including: (1) whether Defendant acted reasonably in failing to obtain medical records of Plaintiff's injury under § 408.025(d) of the TWCA when it knew such records existed; and (2) whether Defendant acted reasonably in relying on the limited information in its possession when it knew about the existence of additional records.  Because the viability of Defendant's claim of a bona fide dispute hinges on these fact questions, summary judgment on this ground is denied.

---

[51]  See Doc. 35-2, Ex. B-3 to Def.'s Mot. for Summ. J., Apr. 18, 2008 Letter from Pl.'s Att. to Linda Evans (listing names and addresses of health care providers seen by Plaintiff).

### 3.  Damages

In a claim against an insurer for the breach of the duty of good faith and fair dealing, a workers' compensation claimant may recover damages for injuries independent of the compensable injury. Aranda, 748 S.W.2d at 214 ("A claimant is permitted to recover when he shows that the carrier's breach of the duty of good faith and fair dealing or the carrier's intentional act is separate from the compensation claim and produced an independent injury."); see United Serv. Auto. Ass'n v. Gordon, 103 S.E.3d 436, 442 (Tex. App.-San Antonio 2002, no pet.) ("An insured is not entitled to recover extra-contractual damages unless the complained of actions or omissions cause injury independent of the injury resulting from a wrongful denial of policy benefits.").

An exacerbation of the original compensable injury, or an injury stemming directly therefrom, does not constitute a recoverable independent injury for the breach of the duty of good faith and fair dealing. See Hulshouser v. Tex. Workers' Comp. Ins. Fund, 139 S.W.3d 789, 793 (Tex. App.-Dallas 2004, no pet.). Rather, damages for such injuries are covered by the exclusivity provision of the TWCA, which provides that "recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage . . . [for] a work-related injury sustained by the employee." Tex. Lab. Code § 408.001 (emphasis added); see Aranda, 748 S.W.2d at 214.

Here, Defendant argues that Plaintiff cannot sustain a claim for breach of the duty of good faith and fair dealing because she has offered no evidence of having sustained an injury independent of her compensable injury.  In response, Plaintiff offers summary judgment evidence in the form of deposition and affidavit testimony that, as a direct result of Defendant's conduct, Plaintiff sustained independent injuries recoverable under the common law, including damages to her credit reputation and mental anguish.[52] With respect to the latter, Plaintiff claims that, because of Defendant's conduct, she has suffered stress, depression, and anxiety, in turn straining her social relationships and causing difficulty sleeping.[53]  Similarly, Plaintiff proffers her credit report to establish her alleged financial injury.[54]

The court finds that Plaintiff's evidence is sufficient to raise a fact dispute as to the existence and extent of independent

---

[52]   Although Plaintiff also alleges damages for lost earning capacity, the court finds no competent summary judgment evidence to support her contention, beyond mere speculation, that she would have obtained a position as a Level 3 Peace Officer absent Defendant's conduct.

[53]   See Doc. 39-16, Ex. P to Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J., Pl.'s Aff.

[54]   See Doc. 39-17, Ex. Q to Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J., Pl.'s Credit Rep.  The court agrees with Defendant that Plaintiff's credit report alone is insufficient to satisfy her burden at trial of proving damages for loss of credit reputation.  See e.g., St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co., 974 S.W.2d 51, 53 (Tex. 1998).  This, however, is an issue to be dealt with at trial; the credit report is sufficient to survive summary judgment.

injuries sustained as a result of Defendant's conduct.[55]   Summary judgment on this ground is therefore denied.

### IV.   Conclusion

Based on the foregoing, the court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion for summary judgment.

**SIGNED** in Houston, Texas, this 21st day of November, 2011.

Nancy K. Johnson
United States Magistrate Judge

---

[55]      In its summary judgment motion, Defendant argues that Plaintiff does not have a cause of action for the breach of the duty of good faith and fair dealing.  The motion does not include, however, an argument for summary judgment on Plaintiff's claim for punitive damages for bad faith should the common law claim survive.  Because the court finds that Plaintiff's cause of action for the breach of the duty of good faith and fair dealing survives summary judgment, so too does her cause of action for punitive damages related to that claim.